UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BOARDS OF TRUSTEES OF THE NORTHWEST METAL CRAFTS TRUST FUND,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC SHIP REPAIR & FABRICATION, INC.,<br><br>Defendant. | CASE NO. 2:24-cv-142-JNW<br><br>ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT |

## 1. INTRODUCTION

Before the Court is Plaintiff Boards of Trustees of the Northwest Metal Craft Trust Fund's (the "Trust") motion for default judgment against Defendant Pacific Ship Repair & Fabrication, Inc. ("PSRF") under Federal Rule of Civil Procedure 55(b). Dkt. No. 10 at 1. PSRF has failed to appear in this action and did not file a response to the Trust's motion. *See generally* Dkt. The Court has considered the motion, the remaining record, and applicable law and GRANTS Trust's motion for default judgment.

## 2. BACKGROUND

The Trust, a Seattle corporation, is a joint labor-management employee-benefit trust organized and operated under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq*. Dkt. No. 13 ¶ 2. The purpose of the Trust is to provide retirement benefits to eligible employees, beneficiaries, and dependents. Dkt. No. 1 ¶ 1.1. PSRF, a California corporation, is bound to the Collective Bargaining Agreement (CBA) and Trust Agreement provided. Dkt. No. 1 ¶¶ 3.1–3.8. In accordance with these agreements, PSRF is required to pay monthly contributions to the Trust. *Id*.

The CBA sets forth the contribution rate on a dollars-per-hour basis that PSRF is contractually required to pay on behalf of eligible employees. Dkt. No. 11 at 31, 36–38. The specific terms of the Trust within the Trust Agreement are incorporated by reference in the CBA. Dkt. No. 1 ¶ 3.6. Acceptance of the Trust Agreement requires that PSRF pay the Trust liquidated damages at 15 percent of the amount owed in delinquent contributions, accrued interest at a rate of 12 percent per annum for the delinquency period, reasonable attorney's fees (with a minimum of $100), and all other reasonable costs. Dkt. No. 11 at 100–01.

The Trust alleges that PSRF made delinquent payments of its required contributions for March through November 2023. Dkt. No. 10 at 4. All contributions within this period were paid more than 40 days late. Dkt. No. 11 ¶ 20. PSRF further failed to make any contributions for December 2023 through June 2024. Dkt. No. 10 at 4. The Trust also alleges that PSRF is liable for $109,292.60 in unpaid

contributions, $45,742.64 in liquidated damages, $19,015.77 in accrued interest, $1,600 in attorney's fees, and $490 in litigation costs. Dkt. No. 10-1 at 2.

## 3.  DISCUSSION

**3.1   Legal standard.**

Under Rule 55, the Clerk of the Court will enter an order of default against a defendant who fails to plead or otherwise defend. Fed. R. Civ. P. 55(a). Additionally, the Court may grant default judgment for the plaintiff upon their request or motion. Fed. R. Civ. P. 55(b)(2). A defendant's default does not necessarily entitle a plaintiff to a judgment, thus, granting or denying relief to the plaintiff is within the court's discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). When determining how to exercise such discretion, courts use the *Eitel* factors established by the Ninth Circuit. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). The seven factors consider: (1) the possibility of prejudice to the plaintiff absent a judgment, (2) the merits of the plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the amount of money at stake in the action; (5) the possibility of a dispute regarding material facts; (6) whether such default was due to excusable neglect, and (7) the firm policy motivating the Federal Rules of Civil Procedure favoring decisions on the merits. *Id.*

At the default judgment stage, all well-pled factual allegations put forth by the complaint are deemed true by the courts, except for allegations in relation to damages. Fed. R. Civ. P. 8(b)(6); *see TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987); *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). The plaintiff must produce evidence in the complaint, along with a

declaration, establishing their entitlement to a sum certain. LCR 55(b)(2)(A). Further, plaintiffs must concisely explain how all amounts were calculated. *Id*. This explanation must be supported by evidence establishing the amount of and entitlement to the principal claim, and where applicable, any liquidated damages, interest, attorney's fees, or other such reasonable costs sought. *Id*. The damages sought in the complaint must be reasonable, supported by evidence, and may not differ in kind or exceed the amount demanded in the pleadings. Fed. R. Civ. P. 54(c); *TeleVideo*, 826 F.2d at 917–18.

**3.2    This Court has subject matter and personal jurisdiction.**

Where the non-moving party has failed to plead or otherwise defend, a district court must confirm that the court has both subject-matter and personal jurisdiction before entering a default judgment. *See Tuli v. Republic of Iraq (In re Tuli)*, 172 F.3d 707, 712 (9th Cir. 1999). The court must also verify that the defendant received adequate service. *Liguore v. Simmons*, No. 24-CV-01621-LB, 2024 WL 4112332, at *4 (N.D. Cal. Sept. 5, 2024); *Rosco v. Advantage Grp.*, No. 2:15-CV-325-RMP, 2019 WL 845419, at *2 (E.D. Wash. Feb. 20, 2019). Here, there is no reasonable dispute that the Court has subject matter jurisdiction under statute, as well as personal jurisdiction over PSRF.

The Trust properly filed this case to enforce its clients' rights under § 502(e)(1) of ERISA, codified at 29 U.S.C. § 1132(e)(1), therefore granting the Court subject matter jurisdiction over this matter. Dkt. No. 1 ¶ 2.1. As the Trust Fund is administered in King County, venue in this Court is proper under ERISA,

§ 502(e)(2) and by agreement between the parties. Dkt. No. 1 ¶ 2; 29 U.S.C. § 1132(e)(2) (declaring that actions brought in a U.S. district court under ERISA may be brought in the district in which the plan is administered). The Court also has personal jurisdiction over PSRF. By statute, ERISA authorizes nationwide service of process and sets forth that personal jurisdiction may be established where service is carried out on a defendant anywhere in the United States. 29 U.S.C. § 1132(e)(2) (stating that process may be served in any other district where a defendant resides or may be found); *see also Cripps v. Life Ins. Co. of N. America*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing 29 U.S.C. § 1132(e)(2)). PSRF conducts business within the district of this Court, and the Trust properly served PSRF under Rule 4(m). *See* Fed. R. Civ. P. 4(m) (requiring service within 90 days after the filing of the complaint); *see also* Dkt. No. 5 at 1. Accordingly, this Court has both subject matter jurisdiction over this matter and personal jurisdiction over PSRF.

**3.3    The *Eitel* factors favor default judgment.**

Here, all seven *Eitel* factors support default judgment.

**3.3.1    The Trust will face prejudice absent default judgment.**

Under the first *Eitel* factor—determining the possibility of prejudice to the plaintiff absent a favorable judgment—default judgment is favored where such judgment is the plaintiff's only recourse for recovery. *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014). Despite timely service, PSRF failed to defend itself throughout litigation. Dkt. No. 8 at 1; *see generally* Dkt. The Trust's right to judicial resolution of its claims will be denied if default judgment is

not entered. *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 391 (C.D. Cal. 2005). Accordingly, this *Eitel* factor favors default judgment.

### 3.3.2   The Trust adequately alleged and supported its claim for damages.

The second and third *Eitel* factors—considering the substantive merits of the claim and sufficiency of the complaint—are generally analyzed together as both factors require that plaintiffs state a claim on which they may recover and that such claim supports a favorable default judgment. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1175—76 (C.D. Cal. 2002). Well-pled factual allegations within the complaint must be taken as true at the default judgment stage; however, legally insufficient claims and "necessary facts" not provided in the pleadings are not established by default. *Cripps*, 980 F.2d at 1267.

The Trust seeks to recover unpaid contributions to a multiemployer trust fund under ERISA. 29 U.S.C. § 1132(a)(3) (setting forth a fiduciary's right to litigate to enforce the terms of multiemployer trusts); Dkt. No. 1 ¶¶ 4.5–4.6. As an intended beneficiary under the Trust Agreement, the Trust retains the right to sue to enforce the terms of multiemployer trusts. In addition to unpaid contributions, ERISA further mandates that the Trust possesses the right to seek interest, liquidated damages, attorney's fees and costs, and other equitable relief. 29 U.S.C. § 1132(g)(2). To successfully make this claim, the Trust must demonstrate that (1) they are a multiemployer trust; (2) PSRF was obligated to make employee benefit contributions under the Trust Agreement and CBA; and (3) PSRF failed to make

such contribution payments. *See Bd. of Trs. of the Sheet Metal Workers Health Care Plan of N. Cal. v. Gervasio Env't Sys.*, No. C03-04858, 2004 WL 1465719, at *2 (N.D. Cal. May 21, 2004).

The Trust has adequately alleged and supported these required elements. First, the Trust's complaint and supporting documents show that the Trust was constructed as a multi-employer trust in accordance with the Labor Management Relations Act and ERISA. Dkt. No. 11 at 76–77 ("the existing Trust Agreement was adopted pursuant to Section 302(c) of the Labor-Management Relations Act of 1974, the Employee Retirement Income Security Act of 1974 as amended . . ."). Second, the CBA and Trust Agreement obligated PSRF to make employee benefit contributions. Dkt. Nos. 1 ¶¶ 3.1–3.8; 11 at 31. Next, PSRF failed to make timely contributions between March 2023 through the present and has failed to make contributions between December 2023 and June 2024. Dkt. No. 11 ¶ 26. Lastly, the Court notes that the evidence supporting these amounts comes from PSRF's own remittance reports submitted to the Trust in the ordinary course of business. *Id.* at 40–63. While the Trust Agreement provides for payroll audits, the Court finds that PSRF's own business records, which it submitted monthly as required under the CBA, constitute reliable evidence of the hours worked and contributions owed. PSRF cannot now complain about the accuracy of its own reports, particularly given its complete failure to appear and contest these amounts. *See Brick Masons Pension Trust v. Indus. Fence & Supply, Inc.*, 839 F.2d 1333, 1338 (9th Cir. 1988) (burden shifts to employer to establish trust's calculations are incorrect).

As the Trust's claims have been adequately alleged and supported, the second and third *Eitel* factors weigh in favor of default judgment.

### 3.3.3    The sum of money at stake is proportional to the allegations against PSRF.

If the recovery sought by the plaintiff is proportional to the harm caused by the defendant's conduct, Courts hold that the fourth *Eitel* factor favors default judgment. *Landstar Ranger, Inc. v. Parth Enters. Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010).

Here, the Trust seeks to recover (1) $109,292.60 in unpaid contributions, (2) $45,742.64 in liquidated damages, (3) $19,015.77 in accrued interest, (4) $1,600 in attorney's fees, and (5) $490 in litigation costs. Dkt. Nos. 11 at 65–69; 13 at 5. Altogether the Trust seeks to recover $176,141.02. *Id.* The total amount is substantial, but the Trust is entitled to these sums under the CBA, which PSRF voluntarily agreed to. Moreover, the Trust has demonstrated that PSRF's failure to pay these contributions directly impacts the Trust's ability to fund benefit obligations to participants and fulfill its fiduciary duties. Dkt. No. 10 at 6.

Accordingly, the Court finds the $176,141.02 judgment to be proportionate to PSRF's conduct of failing to make its required contributions.

### 3.3.4    There is no dispute as to the material facts.

The fifth *Eitel* factor weighs in favor of default judgment when there is no dispute as to the material facts of the case. *Eitel*, 782 F.2d at 1471. Nothing in the record suggests that any factual disputes will arise as PSRF has failed to appear

and the Court must accept all well-pled allegations in the complaint as true. *TeleVideo*, 826 F.2d at 917–18. Dkt. No. 8 at 1; *see generally* Dkt.

### 3.3.5  The record does not show excusable neglect.

Courts look to the sixth *Eitel* factor when determining whether circumstances surrounding the defendant's failure to respond resulted from such neglect. *Eitel*, 782 F.2d at 1472. Where a defendant was properly served with the complaint and notice of default judgment, excusable neglect may be lacking. *Indian Hills Holdings, LLC v. Frye*, 572 F. Supp. 3d 872, 889–90 (S.D. Cal. 2021). Here, the Trust properly served PSRF with a copy of the complaint and summons on February 12, 2024. Dkt. No. 5 at 1. PSRF failed to answer the Complaint within the allotted 21 days of the Trust's proper service. *See* Fed. R. Civ. P. 12(a)(1)(A)(i) (asserting that a defendant must serve an answer within 21 days of proper service with the complaint and summons). PSRF has not filed an answer, a motion, or otherwise appeared in this action. *See generally* Dkt. Following PSRF's failure to respond, the Trust filed its motion for default on May 20, 2024. Dkt. No. 6 at 2. PSRF's failure to respond was not due to excusable neglect as nothing in the record indicates that PSRF lacked proper notice of this action. Accordingly, the sixth *Eitel* factor weighs in favor of default judgment.

### 3.3.6  Public policy favors a decision on the merits, but default judgment is not precluded.

Under the seventh *Eitel* factor—courts must consider the firm policy favoring decisions on the merits. *Eitel*, 782 F.2d at 1471–72. Though there is a strong preference for such decisions on the merits, this preference is not absolute. *PepsiCo*,

238 F. Supp. 2d at 1177. Where a defendant's failure to answer a complaint makes a merits-based decision impractical, the preference for such decision does not preclude a court from granting default judgment. *Id*. Rule 55(b) further permits entry of default judgment where defendants refuse to litigate. Fed. R. Civ. P. 55(b). PSRF's failure to respond to or otherwise appear in this action makes a decision on the merits impractical, thus, the seventh *Eitel* factor weighs in favor of default judgment.

Because all seven *Eitel* factors weigh in favor of default judgment, the Court finds that default judgment is proper and looks next at the warranted recovery.

### 3.4 The Court awards $176,141.02 in damages and attorneys' fees.

Plaintiffs must support their motion for default judgment with "a declaration and other evidence establishing plaintiff's entitlement to a sum certain . . ." LCR 55(b)(2). The evidence provided must include a concise explanation regarding how all amounts were calculated. LCR 55(b)(2)(A). Further, if the plaintiff's claim is rooted in a contract, they must provide a copy of the contract to the court and cite to the relevant provisions. *Id*.

The damages sought by the Trust are of the same kind and do not exceed the amount of those sought in the pleadings. Dkt. No. 1 ¶ 5 (requesting unpaid contributions, liquidated damages, accrued interest, attorney's fees and costs, and an award of post-judgment interest). The Trust Agreement consists of specific provisions for calculating contributions, liquidated damages, accrued interest, attorney's fees, and costs. Dkt. Nos. 1 ¶ 3.7; 11 at 100–101.

The Trust filed two declarations containing spreadsheets that concisely demonstrate the damages and costs accrued in this action. *See* Dkt. Nos. 13 at 5; 11 at 41–63, 65–69. Additionally, the Trust has provided copies of the relevant provisions within the CBA and Trust Agreement. Dkt. Nos. 11 at 8–35, 71–07; 12 at 5–36. The Trust's motion for default judgment seeks $109,314.28 in unpaid contributions, $45,745.90 in liquidated damages, $11,686.33 in accrued interest, and an award of post-judgment interest at 12% on all outstanding contributions as authorized by the Trust Agreement. Dkt. Nos. 10 at 8; 10-1 at 2; 11 at 101. However, the Trust's declarations support damages in the amount of $109,292.60 in unpaid contributions, $45,742.64 in liquidated damages, and $19,015.77 in accrued interest. Dkt. Nos. 11 at 65–69; 13 at 5. The Court concludes that these supplemental materials meet the requirements of the local rules, and the Trust may recover $109,292.60 in unpaid contributions, $45,742.64 in liquidated damages, $19,015.77 in accrued interest, and an award of post-judgment interest as supported by the declarations and Trust Agreement.

The Trust also requests $1,600 in attorney's fees, and $490 in litigation costs, in accordance with the terms put forth in the Trust Agreement. Dkt. Nos. 10-1 at 2; 11 at 100–01; 13 at 5. In connection with its delinquency, PSRF agreed to pay all reasonable attorney's fees, with a $100 minimum, and for all reasonable costs incurred during the collection process. Dkt. No. 1 ¶ 3.7; 11 at 101. The Trust seeks $1,600 in attorney's fees resulting from PSRF's 16 months of delinquency, as well as an additional $490 in costs related to this action for the court filing fee and process service fees for this court. Dkt. Nos. 11 ¶ 16; 13 ¶ 6.

ORDER ON PLAINTIFF's MOTION FOR DEFAULT JUDGMENT - 11

The Court finds that the billing rates and litigation costs are reasonable and recoverable. The Trust may recover $1,600 in attorney's fees and $490 in litigation costs it seeks from PSRF.

### 4. CONCLUSION

Accordingly, the Court GRANTS the Trust's motion for default judgment and AWARDS it damages in the amount of $109,292.60 in unpaid contributions, $45,742.64 in liquidated damages, $19,015.77 in accrued interest, $1,600 in attorney's fees, $490 in litigation costs, and an award of post-judgment interest at 12% on all delinquent contributions, totaling $176,141.02.

Dated this 12th day of August, 2025.

Jamal N. Whitehead
United States District Judge